McKinney J.,
delivered the opinion of the court.
This is an action of assumpsit, brought in the circuit court of Bradley county, for the recovery of rent.
*81 The plaintiffs are the acting commissioners of the “ school land and common school fund,” in the second fractional township north, and range one east of the basis line, in the Ocoee district, and within said county of Bradley.
It appears from the proof in the record, that the plaintiffs in their official character of commissioners as aforesaid, leased to the defendants a certain parcel of school land, situate within the township above mentioned, for the year 1849, to expire on the first of January, 1850 : for which they were to receive from the defendants, as rent, one third of the crop of corn raised thereon, to be delivered on the premises when the corn was husked. Under this lease the defendants entered, cultivated, and enjoyed the premises during said year; but refused to deliver the rent to the plaintiffs, upon the ground hereafter to be stated.
In making said lease, the plaintiffs acted under the authority of the act of 1841-2, ch. 19. That statute (sec. 1,) constitutes each township lying within the counties and parts of counties included in the Hiwassee and Ocoee districts, a common school district. The second section declares that the commissioners of school lands in said districts, shall also be common school commissioners : and as such are charged with all the duties appertaining to common school commissioners, by the laws of this State. By the 11th section, said commissioners are required to “rent the school lands in their respective townships from year to year, or for a longer period, not exceeding five years, for the benefit of the common school fund. And are allowed, as compensation for their services in receiving and disbursing, six per cent, on the amount of money by them received from rents and profits arising from said school lands. They are required to give bond and security for the faithful discharge of their duties, and to make annual settlements on oath,” Sections 7, 9. And by the 13th section, they are *82 constituted a quasi corporation — “ may sue and be sued for all causes of action growing out of their official station.”
In the year 1849, after the making of said lease, and during the pendency thereof, the premises leased to the defendants as aforesaid, together with other school lands in said township, were brought to public sale, pursuant to the provisions of the Act of 1844, ch. 104, and 1846, ch. 121.
The Act of 1844, sec. 1, provides for holding an election, by the commissioners of school lands, in each township owning school lands, at which every citizen of the township qualified to vote for membei’s of the General Assembly, shall have the right to vote for or against the sale of the school lands in such township.
And by the third section, if a majority of all the votes shall have been cast for the sale of such school lands, the return of the election, and the certificate of the commissioners, are to be deposited with the clerk of the circuit court of the county. And the judge of said circuit, court, at the first term thereafter, or, in case of failure at the first, then at any subsequent term, is required to cause said return and certificate to be entered of record in said court: and thereupon to order and decree a sale of such lands, by the clerk of said court, upon giving notice as prescribed in the act.
The sale is to be on the premises, to the highest bidder, on a credit of ten years, (except for one eighth part,) and an obligation, with two or more sufficient securities, is to be taken for the purchase money, payable to the President and Directors of the Bank of Tennessee, with interest from the day of sale, payable annually ; and also stipulating for the annual payment of one tenth of the principal, in addition to the interest. The purchase money is for the use of common schools in the township; and a lien is to be retained upon the land to secure its payment.
The seventh section provides, that when the purchase mo *83 ney and interest shall have been fully paid, a grant from the State, for the lands so purchased, shall issue to the person owning said lands.
The third section directs, that the clerk of the circuit court shall issue to the purchaser a certificate of purchase, specifying the number of acres bought, and the price. And by the Act of 1846, ch. 121, sec. 10, such certificate of purchase is declared to be sufficient evidence of title to enable the purchaser to maintain an action of ejectment, or other proper action, to recover the possession of the land purchased, where the same may be adversely had.
The clerk is also, by the 9th sec. of-1844, required to make out duplicate statements in writing, specifying with minuteness, the lands sold, the amount, the notes or obligations, &c.; one of which is to be delivered to the Bank, and the other is to be returned to the first term of the circuit court after the sales, and is required to be spread upon the record of said court. By the 15th sec., the lands ordered to be sold are to be valued, previous to the sale, by three persons living in the township where the lands lie, to be appointed by the county court of the county, and no sale is to be made below such valuation.
At the sale before referred to, the tract of land leased by the plaintiffs to the defendants — which contained two hundred twenty-seven and three-fourths acres — was sold to David L. Knox for the sum of $1417 00. Knox transfered his bid to Samuel Weir, who executed his obligation for the purchase money as required by the statute, and was reported as the purchaser.
Said sale was made by the clerk of the circuit court of Bradley, on the 18th day of September, 1849. At the January term, 1850, of said circuit court, the clerk made his return, or report of sales, which was excepted to by the commissioners of the school land and common school fund in said township, on various-grounds, which need not be here noticed; and the record *84 informs us,that, on afgument,said exceptions “were overruled, and the sale of the schoollands confirmed.”
Several witnesses were examined as to the terms of sale publicly announced by the clerk, at the time said tract of land was put up for sale; and the weight of proof is, that it was stated by him that possession would not be delivered until the first of January, 1850.
The proof shows, that the persons appointed to value said land, did not, in making their estimate of the value thereof, take into view the value of the rent for the year 1849,because they understood the rent would go to the benefit of the school fund, and not to the purchaser. Knox, who bid off said land, and who was examined as a witness on the trial, stated, that, in buying the land, he did not consider that he was to get the rent, or that it was included in his purchase. It was also proved, that Weir said, he had not expected to get the rent; but, after the sale, he had been advised, that by law7, he was entitled to the rent.
Upon the sole ground that, by operation of law, Weir, the substituted purchaser, was entitled to said rent, the defendants refused 1o pay it to the plaintiffs; and the same having been demanded, after due, andpaymentrefused, the plaintiffs brought this action.
Two issues were submitted to the jury. The first, upon the general issue of non-assumpsit; and the second, upon the replication to a special plea, the substance of which is, that by virtue of the sale to Weir, and the certificate of purchase from the clerk, he was, in law, substituted to all the rights of landlord, from the time of said sale, and had a right to demand and receive the rent of said land for the year 1849; and that therefore the same was paid to him by the defendants, on the 15th day of November, 1849, which payment is relied upon in bar of thé recovery sought by the plaintiffs.
This plea was demurred to, but the demurrer wras overruled *85 and, in our view of the case, it need not be noticed further than to say, that we think it defective.,, and that it forms no bar to the plaintiffs’ action.
The court, among other matters not necessary to be noticed, instructed the jury, in substance, that upon a sale of the premises by the clerk, in conformity with the requirements of the law, the “title, for all legal purposes, would pass to the purchaser, and he would take the attitude of the lessors, so far as related to the tenantthat if the crop, out of which the rent was to be paid, Was not severed from the sale, and was not due, at the time of the sale, the rent would pass with the land to the purchaser, and a payment thereof to him would be valid, and might be given in evidence under the general issue to defeat the plaintiffs’ action ; that the term or condition of sale, declared by the clerk, that possession would not be delivered till the first of January, 1851, was unauthorized, and of no effect; and that the purchaser’s understanding, that he was merely buying the land, without any claim to the rent, would not effect the legal operation of the sale and purchase.
The jury found a verdict for the defendants ; and, upon the refusal of the court to grant a new trial, the plaintiffs appealed in error to this court.
We think the foregoing instructions of the court are, in several respects, founded on a mistaken view of the law of the case. 1st. It is assumed that the circuit judge, by the proper construction of the statute before referred to, is charged with no active duty, nor vested with any power, beyond the simple act of making an order or decree for the sale of the lands; that in giving effect to the requirement of the 9th section, that the clerk’s statement or report of sale “ shall be spread upon the record of said court,” the judge is altogether passive; and that the sale is complete in itself, by the action of the clerk ; and needs no confirmation by the judge, in order to perfect it.
This assumption, we think, is in direct opposition to the ob *86 vious reason and spirit of the law. High considerations of public policy, suggested by past experience in regard to the improvident management of funds set apart by law for educational purposes, no doubt induced the Legislature to require the supervision and control of the judges of the circuit courts, over the sales of school lands in the Hiwassee and Ocoee districts. What other motive could have prompted such a requirement ? And why invest the judge, in cases where the preliminary steps had been regularly pursued, with power to decree a sale; and yet deny to him the power, in cases where a sale may have been made in contravention of law, to interpose for the purpose of setting such illegal sale aside? Would not such a construction be absurd ? And yet, if the authority to set aside a sale, contrary to law, be not conferred upon the judge, in such case, it exists nowhere, by the provisions of the law under consideration. But we think the intention of the Legislature — though not very explicitly declared — is sufficiently apparent to justify the construction, that the sale by the clerk is not complete, until confirmed by the judge. This being established, the sale by the clerk, in such case, is to be assimilated to sale by the master, under a decree in chancery. And, in the latter case, the settled doctrine of this court is, that the sale is under the control of the court, and is not obligatory upon the parties, until confirmed by the chancellor. Previous to confirmation, it may be set aside, upon a proper case made, at the instance of either party. And not until it is confirmed, is the purchaser regarded as vested with a right to the property. 4 Humph. Rep. 371.
2d. Again: The court further assumes, that upon a sale by the clerk, and the delivery of a certificate of purchase, in the mode prescribed, the purchaser is placed upon the footing of a purchaser taking a legal conveyance of the estate. This is an erroneous conclusion. It is certainly true, as a general rule, that a sale and conveyance of land, upon which there is a *87 growing crop, by the owner of both the land and crop, carries with it to the purchaser, the interest in the-crop as much as in the land, in the absence of any exception, or reservation, as to the crop. Mr. Kentsays, (4 vol. Com. 468,) “If the land be sold without any reservation of the crops in the ground, the law is strict as between vendor and vendee; and I apprehend the weight of authority to be in favor of the existence of the rule, that the conveyance of the fee carries with it whatever is attached to the soil, be it grain growing, or anything else ; and that it leaves exceptions to the rule to rest upon reservations to be made by the vendor.” Such is the law in the case of a sale by a private individual; and we perceive no reason why the same principle should not apply in cases of public or judicial sales, when complete.
But this principle has no application to the case undercon-sideration. Here, the legal estate did not pass to the purchaser. On the contrary, by the express provision of the law, the title is reserved in the State until payment of the purchase money. And perhaps another ground of distinction might be found, in the fact, that the real and equitable interest in the rent in question, was neither in the State, nor in th'e commissioners of the scool land and common school fund- — at whose instance the sale took place — both the State and the commissioners being mere trustees for the common schools of the township
It results, from the foregoing principles,, that until after the period when the rent in question fell due, namely, first of January, 1850, the purchaser of the premises in question, had no vested right, either of property or possession therein — the confirmation of the sale being subsequent to that day; and consequently had no right whatever to claim or receive the rent sued for in this action. This being so, the voluntary payment to him of the rent, by the defendants, was in their own wrong; and affords no protection against the recovery sought by the plaintiffs.
*88 It is not deemed necessary, in order to justify more strongly our conclusion in this case, to refer again to the fact, that the land was sold with an express reservation of the possession until after the day when the rent fell due; or to the additional fact, that the purchaser distinctly understood at the time of his purchase that he was not entitled to receive the rent.
The judgment will be reversed, and the cause remanded for a new trial.